## Morris v. Hatcher.

(Decided October 30, 1917.)

Appeal from Pike Circuit Court.

Contracts.—Evidence examined and found insufficient to show contract was entered into.

J. J. MOORE for appellant.

J. R. JOHNSON, JR., for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Stephenson and Hatcher owned a small printing establishment in Pikeville, and in February, 1914, they leased the plant to the appellant, Morris, who was publishing a newspaper at Pikeville, at an annual rental of $150.00, payable in monthly installments. In March, 1915, the lease was renewed at an annual rental of $200.00, payable in monthly installments on the first day of each month.

It appears that Hatcher and Stephenson had a misunderstanding of some sort in the fall of 1915, and on October 19th, of that year, Stephenson claims that he bought the interest of Hatcher in the printing plant for $200.00 and his assumption of two notes for $50.00 and $150.00 that were debts against the plant. On November 23, 1915, apparently conceiving himself to be the owner of the whole plant, Stephenson sold it to Morris under a contract setting out that he had sold his one-half interest to Morris and also sold him his title and interest in a contract with Hatcher for the purchase of Hatcher's one-half interest.

After this, Morris, assuming to be the owner of the plant and newspaper printed thereon, exercised all acts of ownership over same, and his conduct in this respect resulted in Hatcher's bringing, in December, 1915, this suit against him, in which he set out, in substance, that Morris was in default in the payment of his rent; that he was insolvent; that he had broken his contract with Stephenson and Hatcher; that he was assuming to be the owner of the entire plant when, in fact, he, Hatcher, was the owner of one-half of it; and he asked that the plant be put in the hands of a receiver and sold and the proceeds paid to the parties as their interests might appear.

To this suit Morris filed an answer denying that he was in default in payment of his rent and set up that he was the owner of the entire plant under his purchase from Stephenson, and averred that Hatcher had no interest in it whatever.

After the pleadings were made up, the evidence was taken, and the case being heard before Judge Gardner, a special judge, he entered a judgment finding that Hatcher was the owner of an undivided one-half interest in the plant which was indivisible, and ordered that it be sold and the proceeds be divided equally between Morris and Hatcher.

From this judgment Morris appeals, insisting that under the evidence he was the owner of the plant by virtue of his purchase from Stephenson.

The case turns on the question whether Hatcher sold his one-half interest in the plant to Stephenson on October 19. If he did, the judgment should be reversed; if he did not, it should be affirmed. On this question of fact the lower court found that Hatcher did not sell his interest to Stephenson, and in this conclusion of the court we concur.

It appears from the evidence that on November 23, 1915, Stephenson and Morris entered into a written contract for the sale and purchase of this plant, the contract reciting that Stephenson sold to Morris "a one-half interest in" the plant, and that he also sold and transferred to Morris "all his right, title and interest in and to the following contract with Hatcher. . . ." Then follows a statement of the contract Stephenson claims he had with Hatcher; and this contract between Hatcher and Stephenson Morris agreed to perform.

Morris testifies that Stephenson told him he had contracted for the interest of Hatcher and would like to sell that interest to him. Asked to state what Stephenson said to him about the interest of Hatcher, he answered: "Said to buy Tom's interest; then I would have the whole thing. Q. Then, as I understand you, Mr. Morris, Mr. Stephenson never signed over to you his right acquired from Mr. Hatcher in the contract between you and him? A. No, sir." He also testifies that on November 20th, Hatcher gave him a written notice that he was in default in the payment of his rent and must surrender possession of the plant on December 1, 1915; that upon receipt of this notice he went to see Stephenson, who directed him on November 22nd to disregard it.

Hatcher says that on November 20th he gave the notice to Morris and that on the next day he met Stephenson, who asked him what was the trouble between him and Morris, and he replied that he was trying to get Morris to pay his rent according to the contract, and that Stephenson then said, "Make him live up to his contract." He further testifies that on October 19th, he asked Stephenson what he would give him for his interest in the plant, and Stephenson told him to make a proposition give or take, and that he, Hatcher, made the proposition to take $200.00, Stephenson to assume the debts against the plant amounting to $150.00; that in reply to his proposition Stephenson said "that he would let me know," and a little while afterwards Stephenson tendered him a check and he refused to accept his offer. He further testified that on November 21st Stephenson asked him what he would give him for his interest in the plant and that afterwards he sent J. R. Johnson to him to purchase his interest; that he declined to accept the check Stephenson offered him on October 19th, because he had changed his mind about selling his interest.

Stephenson testifies that on October 19th, Hatcher made him a proposition to take $200.00 for his interest, he, Stephenson, to assume the debts of $150.00 against the plant; that he asked Hatcher "if he would give him a little time to get the money, and the best I remember is that he stated he would, and left the office"; that he then went out and made arrangements to get the money and tendered Hatcher a check for $225.00, which included $25.00 that he owed Hatcher, and afterwards tendered him a check for $200.00; that Hatcher refused to accept either one of these checks; that after this transaction with Hatcher he sold to Morris "all the interest he had." Asked if he did not tell Hatcher on November 21st, at which time Hatcher was trying to collect back rent from Morris, to make Morris live up to his contract, he said, "I don't recall saying 'make him live up to his contract,' for I did not believe Hatcher could make him do it." He was further asked if he did not on November 21st, as testified to by Hatcher, ask Hatcher what he, Hatcher, would give him for his interest, and he answered, "I did ask Mr. Hatcher if he wanted to buy me out."

Stratton, the partner of Stephenson, testifies that Stephenson and Hatcher had a conversation in his office on October 19th about the sale of the printing plant and that, as he remembered it, Hatcher said he would take

$200.00 for his interest, the purchaser to assume the indebtedness of the concern, but he does not say what reply Stephenson made to this proposition.

On this evidence it seems to us quite clear that there was no binding contract made between Stephenson and Hatcher on October 19th, or at any other time. The conversations between Hatcher and Stephenson on November 21st show that Stephenson at that time did not consider that he had bought the interest of Hatcher.

Counsel for Morris further complains that the judgment does not give Morris credit for the $100 note due by the firm of Stephenson and Hatcher which he paid. It is shown, however, by an order made by Judge Roberson, in December, 1915, that Morris should have credit on his rent by this $100, and when the fund arising from a sale of the property is distributed, Morris should be paid this $100.00 out of the fund, or so much thereof as remains after satisfying out of it whatever rent he owed before the plant was put in the hands of a receiver.

The judgment is affirmed.